**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| **ROBERTO CONTRERAS**, individually and on behalf of others similarly situated, | |
| Plaintiff, | Civil Case No.: 2:23-cv-00532-WSS |
| vs. | |
| **WORLDWIDE INDUSTRIES CORP.,** | |
| Defendant. | |

<u>**JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**</u>

**I.    INTRODUCTION**

Plaintiff Roberto Contreras and Defendant Worldwide Industries Corp. (collectively, the Moving Parties") jointly move this Court to approve the Joint Stipulation of Settlement and Release ("Proposed Settlement") and the Notice and Consent and Release Forms included as Exhibit B and C to the Proposed Settlement.[1]

For the reasons set forth herein, the Proposed Settlement is a fair and reasonable resolution of a *bona fide* dispute over Defendant's liability and exposure for the claims asserted in this action. Accordingly, the Court should enter an order (1) approving the Proposed Settlement in its entirety; (2) directing the Parties to implement and complete the notice and claims process described in the Proposed Settlement; and (3) dismissing this action with prejudice.

---

[1] Filed contemporaneously with this Motion.

II.    BACKGROUND

A.    The Claims and Defenses

The Complaint alleges that Defendant Worldwide Industries Corp., a Butler, Pennsylvania-based company that provides industrial tank painting and maintenance services, failed to pay Plaintiff and other hourly-paid laborers minimum wages and overtime as required under the Fair Labor Standards Act ("FLSA"), Massachusetts General Laws c. 149, §§ 148 and 150, and c. 151 §§ 1A and 20 ("Massachusetts Wage Laws"), the Missouri Minimum Wage Law, §§ 290.500 R.S. Mo., *et. seq.* ("MMWL"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, et seq. and attendant regulations, 34 Pa. Code § 231.1, *et seq.* and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 *et seq.*

The Complaint alleges several unlawful policies maintained by Defendant: (1) failure to report all time worked by laborers at their job sites in the company timekeeping system, and/or deducting hours reported in the company timekeeping system from their paid time causing them to not receive their hourly or overtime wages for all hours worked ("Job Site Work Allegations"); (2) failure to pay laborers for time spent travelling outside of their home communities during their normal working hours between their homes and the locations at which they were stationed to work for Defendant, at which they stayed overnight ("Overnight Travel Allegations"); and (3) failure to include non-base compensation, including but not limited to "Supp Benefit" pay in the calculation of laborers' regular rates of pay, resulting in payment for overtime work at a less than 1.5 times their regular rate of pay ("Overtime Rate Allegations").

Defendant vigorously disputes these allegations. As to the Job Site Work Allegations, Defendant denies that it deducted or omitted any hours worked from laborers' time sheets, and

maintains that its foremen properly recorded laborers' time, which records were then subject to modification and approval by laborers prior to being submitted to payroll. As to the Overnight Travel Allegations, Defendant maintains that the travel time alleged by Plaintiff is not compensable as no work activities were performed during the travel, and because laborers are employed on a per-project basis and are not employed between jobs when travel occurred. *See Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861 (8th Cir. 2021) (employees who were hired on a per-project basis and travelled out of town to and from remote project locations were not entitled to wages for time spent travelling, because they were not "employees" during their travel). As to the Overtime Rate Allegations, Defendant maintains that it included "Supp Benefit" pay and all other applicable non-base compensation in its calculation of laborers' overtime rates as required by law, with the possible exception of certain projects in Pennsylvania, which has now been corrected.

### B.    Procedural History

Plaintiff commenced this action on March 27th, 2023, and Defendant filed its Answer and Affirmative Defenses on June 12, 2023, in which it, among other things denied liability for the claims asserted. [ECF 8] Prior to formal discovery or motion practice, the parties attended private mediation sessions with Tina O. Miller, Esq. of Comber Miller LLC on November 17th, 2023 and December 15, 2023, which resulted in the Proposed Settlement. *See* Declaration of Nicholas Conlon ("Conlon Decl.), ¶ 2.

Prior to the mediation, Defendant produced a list of hourly-paid laborers who were employed in non-supervisory roles as painters on Defendant's projects whom Defendant supervised, managed, and controlled during such projects within the three years preceding the filing of the action, as well as their dates of employment and total recorded work hours in the relevant three-year timeframe. *Id.* at ¶ 3. The list included thirty-two (32) persons, including Plaintiff. In addition,

Defendant produced weekly earnings records for Plaintiff and five of the other laborers selected by Plaintiff's counsel, Plaintiff's time sheets, and earnings records from Pennsylvania projects in which laborers received "Supp. Benefit" payments. *Id.*. Between the first and second mediations, Plaintiff produced, for the purposes of mediation only, geolocation data from Plaintiff's cell phone, which was thoroughly analyzed and compared to Plaintiff's time sheets and pay records. *Id*.

These documents enabled the Parties to exchange demands and offers prior to and during mediation, and facilitated a robust discussion of the strength and weaknesses of Plaintiff's claims and Defendant's potential exposure, as well as an appreciation for the risks each side would incur and the resources they would expend by forgoing early resolution.

### C. The Proposed Settlement

The Proposed Settlement provides that subject to Court approval, Defendant will pay up to $200,000.00 to settle the claims of Plaintiff and other eligible employees who affirmatively opt to participate in the Settlement by submitting Consent and Release Forms. *See* ¶ 19. From the $200,000.00 "Total Eligible Settlement Amount," a proposed $78,964.22 would be allocated to the undersigned counsel as attorneys' fees and costs, which is comprised of $66,666.67 in attorneys' fees (one third), plus $7,310.63 for reimbursement of costs, and $4,986.92 in costs for the services of a Settlement Administrator, which would be retained by Collective Counsel to assist in the administration of the Settlement. *Id.* at ¶ 25; Conlon Decl. ¶ 4.   Additionally, $10,000 would be paid to Plaintiff as a "Collective Representative Payment" in exchange for his service as a Representative Plaintiff. *See* Proposed Settlement, ¶ 20.

The remaining $111,035.78 in total "Individual Payments" will be eligible to be claimed by Plaintiff and other 31 persons listed on Exhibit A to the Settlement, which includes all former and current non-exempt laborers of Defendant who were employed in non-supervisory roles as painters

4

on Defendant's projects whom the Company supervised, managed, and controlled during such projects, between March 27, 2020 and March 27, 2023 (referred to as "Eligible Settlement Participants"). *Id.* at ¶¶ 6, 21. The Individual Payments are set forth in Exhibit A, and were calculated by Collective Counsel and approved by Defendant's Counsel. Conlon Decl. ¶ 5. They are based proportionally on the Representative Plaintiff and each Eligible Settlement Participant's alleged damages during the period of March 27, 2020 and March 27, 2023. Of the $111,035.78 in total Individual Payments, $40,221.94 is attributable to the Job Site Work Allegations (to be allocated amongst the Eligible Settlement Participants based on their *pro rata* share of total recorded hours), $68,486.02 is attributable to the Overnight Travel Allegations (to be allocated amongst the Eligible Settlement Participants based on their *pro rata* share of total estimated miles driven travelling from the hotel or job site back home), and $2,327.82 for the Overtime Rate Allegations (to be allocated amongst the Eligible Settlement Participants to the extent they worked in Pennsylvania, based on their *pro rata* share of total recorded hours). *Id.* at ¶ *Id.*

To effectuate the distribution of these payments, Collective Counsel will hire a Settlement Administrator (Apex Class Action Administration) to send the Notice and Consent and Release Form included as Exhibit B to the Proposed Settlement to the Eligible Settlement Participants via mail and email (where possible), who would then have forty-five (45) days to execute and submit Consent and Release Forms, included as Exhibit B to the Proposed Settlement. *See* Proposed Settlement, ¶¶ 2, 34-35. Plaintiff and the other Eligible Settlement Participants who timely submit Consent and Release Forms would receive their Individual Payments and would release Defendant from "all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, unpaid travel time, liquidated damages, interest, attorneys' fees, and

expenses, pursuant to the FLSA, the Massachusetts General Laws, the MMWL, the PMWA, and the WPCL" during the period March 27, 2020 and the date the Proposed Settlement is approved. *Id.* at ¶ 27. Eligible Settlement Participants who elect not to submit Consent and Release Forms would not release any claims and their Individual Payment would be retained by Defendant. The proposed Settlement does not seek to bind any persons who do not affirmatively elect to participate and the Parties are not requesting that the Court certify a class under Fed. Rule Civ. P. 23.

### III.    LEGAL ARGUMENT

"Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees[.]" *Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014). The first is a compromise supervised by the Department of Labor under 29 U.S.C. § 216(c). *Id.* The second, applicable here, is a "district court-approved compromise" under 29 U.S.C. § 216(b). *Id.*

"When parties present to the district court a proposed [FLSA] settlement, the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (internal quotation marks omitted). The FLSA's provisions "are mandatory and not subject to negotiation and bargaining between employers and employees because allowing waiver by employees or releases of employers would nullify the purposes of the act." *Deitz v. Budget Renovations & Roofing, Inc*., No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005, 2013 WL 2338496, at *2 (M.D. Pa. May 29, 2013).

Thus, "if the Court determines that the settlement concerns a 'bona fide dispute,' it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the

employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Howard v. Philadelphia Hous. Auth*., 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016). When the proposed settlement results from arm's length negotiation between competent counsel, the Court begins with a "strong presumption in favor of finding [the] settlement fair[.]" *Crabtree v. Volkert, Inc*., No. CIV.A. 11-0529-WS-B, 2013 U.S. Dist. LEXIS 20543, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013).

### A.  *Bona Fide* **Dispute**

A "dispute is '*bona fide*' where it involves factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) (internal quotation marks omitted). As a result, the Court needs to "consider the substantive allegations and determine whether factual issues, specific to these parties, are actually in dispute." *Deitz*, No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005, 2013 WL 2338496, at *3. "In essence, for a *bona fide* dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus*, 155 F. Supp. 3d at 530.

Here, the Proposed Settlement resolves numerous disputes that the Court or jury would have likely needed to have resolved in the absence of a settlement, including whether laborers were suffered or permitted to perform work before or after their scheduled shifts, whether Defendant deducted or omitted any hours worked from laborers' time sheets, whether the travel time underlying the Overnight Travel Allegations is compensable, the extent to which Defendant correctly calculated overtime rates, and whether any putative FLSA violation by Defendant was willful and/or not in good faith. Defendant has vigorously denied the allegations and provided extensive documentary and legal support in defense of its wage and hour practices. The settlement

of these claims was only accomplished with the assistance of a mediator. Accordingly, the '*bona fide* dispute' requirement for settlement approval is satisfied. *See e.g. Brown v. Kadence Int'l, Inc.*, No. 22-1097-KSM, 2023 U.S. Dist. LEXIS 49202, at *17 (E.D. Pa. Mar. 23, 2023) (finding *bona fide* dispute based on the fact that "in response to Plaintiffs' allegations, Defendant denied all liability and raised several affirmative defenses that could have limited Plaintiffs' recovery, namely, that Plaintiffs' claims were barred in part by the applicable statute of limitations and whether liquidated damages were available under the FLSA," and "maintained that Plaintiffs had been properly classified as independent contractors and were not subject to the FLSA's minimum wage and overtime requirements."); *Copley v. Evolution Well Servs. Operating, LLC*, No. 2:20-CV-01442-CCW, 2023 U.S. Dist. LEXIS 23452, at *18 (W.D. Pa. Feb. 10, 2023) ("In this case, there is a *bona fide* dispute as to whether FLSA collective members were entitled to the time spent traveling from their homes to remote work location and from employer-sponsored housing to their daily work sites.").

### B.    Fair and Reasonable Settlement

The standard for "assess[ing] whether the proposed settlement is fair and reasonable" is "not exacting." *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, *6 (W.D. Pa. Oct. 22, 2019). "'If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.'" *Id.* at *6 (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)). Only "[r]arely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'" *Bonetti*, 715 F. Supp. 2d at 1227.

"In analyzing proposed FLSA settlements, 'district courts have relied on the factors set out by the Third Circuit for approving class action settlements pursuant to Federal Rule of Civil

Procedure 23.'" *Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *7 (quoting *Brown v. TrueBlue, Inc*., No. 1:10-CV-00514, 2013 U.S. Dist. LEXIS 137349, 2013 WL 5408575, at *2 (M.D. Pa. Sept. 25, 2013)). "But 'unlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not negotiating around the clear FLSA requirements via settlement.'" *Id.* (quoting *Acevedo v. BrightView Landscapes, LLC*, No. CV 3:13-2529, 2017 U.S. Dist. LEXIS 163870, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017)). "Thus, while the factors used to evaluate Rule 23 class action settlements provide a framework for the Court's analysis, rigid application of those factors is neither required nor appropriate in the FLSA context." *Id.* at *8 (citing *Deitz*, No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005, 2013 WL 2338496, at *5)).

As set forth by the Third Circuit in *Girsh v. Jepson*, the Rule 23 factors are:

1) the complexity, expense, and likely duration of litigation;

2) the reaction of the class to the settlement;

3) the stage of proceedings and amount of discovery completed;

4) the risks of establishing liability;

5) the risks of establishing damages;

6) the risk of maintaining the class through trial;

7) the ability of the defendants to withstand a greater judgment;

8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

1)  Complexity, Expense, and Likely Duration

The first *Girsh* factor asks the Court to evaluate the complexity, expense, and likely duration of litigation. Generally, "[c]ases requiring great expenditures of time, money, and other resources on behalf of the parties and the court" are "good candidates for settlement." *Deitz*, No. 4:12-cv-0718, 2013 U.S. Dist. LEXIS 75005, 2013 WL 2338496, at *5. As a result, the greater the apparent complexity and likely expense associated with litigating a case to its conclusion, the more likely it is that the Court will find a proposed settlement to be fair to employees and the public. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998).

This factor warrants approval because the parties reached the Proposed Settlement prior to conditional certification, thereby avoiding motion practice on this issue and any challenge to certification. Achieving a settlement early in the litigation process also obviated the need for extensive discovery on final certification, liability, and damages, which would have included extensive written discovery, including costly production and analysis of geographical ESI, and the taking depositions of Defendants' ownership and management and of Plaintiff and other laborers who joined the case after conditional certification. Conlon Decl. ¶ 6. Further, the Parties likely would have engaged in significant additional motion practice, with Plaintiff potentially moving to certify this case as a Rule 23 class action, and Defendant moving to decertify the collective action and both sides filing motions for summary judgment. *Id.*. Finally, that trial would have been expensive and time-consuming for both sides because of the complex factual and legal issues involving up to 32 laborers who reside through the country. *Id.*

2)  Reaction of Class to Settlement

The second *Girsh* factor asks whether any members of the "class" have objected or

otherwise reacted to the proposed settlement. But this factor is "not directly applicable" in the context of an FLSA collective action, where the settlement class will consist of voluntary opt-in plaintiffs, "all of whom wish to settle this matter in accordance with the terms of the proposed settlement agreement." *Deitz*, No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005, 2013 WL 2338496, at *6.

The Parties are not aware of any objections to the Proposed Settlement. Conlon Decl. ¶ 7. Thus, to the extent this factor applies at all, it favors approval. *See Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *11.

> 3) Stage of Proceedings & Amount of Discovery Completed

The third *Girsh* factor requires the Court to examine the stage of proceedings and amount of discovery completed before settlement, to determine whether the parties have an "adequate appreciation of the merits of the case before negotiating." *In re Prudential Ins. Co*., 148 F.3d at 319. This requirement ensures that there is "no risk that self-interested counsel is seeking a resolution of the claims on terms that are most beneficial to counsel alone without regard for the interests of the parties." *Deitz*, No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005, 2013 WL 2338496, at *6.

While the Parties have not conducted formal discovery, Defendant has provided Plaintiff with ample information to provide him with an adequate appreciation for the merits of the case, including the dates of employment, hours recorded, residences, and work states of the 32 Eligible Settlement Participants, weekly earnings records for Plaintiff and five of the other laborers who were randomly selected by Collective Counsel, Plaintiff's time sheets, and earnings records from Pennsylvania projects in which laborers received "Supp. Benefit" payments. These documents enabled the Parties to formulate well-informed positions as to the damages potentially recoverable

at trial, the amount and extent of discovery that would be needed to bring the case to trial, and how the evidence adduced through such discovery would ultimately bear on the claims at issue. Accordingly, this factor warrants approval. *Brown*, No. 22-1097-KSM, 2023 U.S. Dist. LEXIS 49202, at *20-21 (finding this factor supportive of approval notwithstanding lack of formal discovery or depositions); *Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *11-12 (same).

### 4)  Risks of Establishing Liability & Damages and of Maintaining the Class

The fourth, fifth, and sixth *Girsh* factors require the Court to "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefit of an immediate, certain settlement." *Deitz*, No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005, 2013 WL 2338496, at *6.

Proceeding to trial would carry significant risks in Plaintiff's ability to establish liability, avoid Defendant's attempts to limit his recoverable damages, and maintain the collective through the final certification phrase. Defendant would seek to disprove Plaintiff's factual contentions that he and other laborers were suffered or permitted to perform work before or after their scheduled shifts, and that Defendant deducted or omitted any hours worked from their time sheets. Plaintiff would also face the risk of Defendant avoiding liability for the Job Site Work Claims based on its contention that foremen, prior to submitting these records weekly for payroll, asked all workers to review the time cards before they signed them, permitting laborers to make adjustments to the time cards prior to signing. Even if Plaintiff established liability, he would need to prove the amount and extent of his alleged unpaid work at the job site, rebut Defendant's claim that he was overpaid on some days, and defeat Defendant's good faith defense to recover liquidated damages. Likewise, Defendant could potentially avoid liability for the Overnight Travel Claims if it succeeded in

establishing that laborers were not employed during such travel, and could have limited Plaintiff's recovery for this claim by disputing what Plaintiff's "normal working hours" were for purposes of 29 C.F.R. § 785.39, and/or that it believed in good faith that such travel time was not compensable under the FLSA.

Finally, the Proposed Settlement eliminates the risks Plaintiff would face in obtaining certification of the putative collective and classes, which are substantial given that no putative collective or class members have joined the case. Plaintiff has not yet moved for or obtained even conditional certification, which Defendant would oppose in a non-settlement context. *See Brown*, No. 22-1097-KSM, 2023 U.S. Dist. LEXIS 49202, at *22 (finding sixth *Girsh* factor satisfied where "there was some risk that Defendant could have avoided collective liability if the Court had denied a motion for conditional certification, or if Defendants had been successful in filing a motion for decertification").

5) Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor "considers whether the defendant could withstand a judgment for an amount significantly greater than the proposed settlement." *Deitz*, No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005, 2013 WL 2338496, at *7. That said, a defendant's ability or inability to withstand a greater judgment is "irrelevant" when "the record includes no evidence related to the [d]efendant's ability to pay an amount greater than the settlement, nor ... any indication that this factored into settlement negotiations." *Id.*

Here, Defendant's ability to pay a greater amount did not factor into settlement negotiations, so this factor is not relevant.

6) Reasonableness of Proposed Settlement

Finally, the eighth and ninth *Girsh* factors requires the Court to broadly assess the

"reasonableness" of the settlement by balancing Plaintiffs' best possible recovery against the risks of litigation. "Ideally, this assessment should include comparing the value of damages that [the] plaintiffs would likely recover if successful, offset by the risk of not prevailing, with the amount of the proposed settlement." *Deitz*, No. 4:12-CV-0718, 2013 U.S. Dist. LEXIS 75005, 2013 WL 2338496, at *7. But where "calculating the 'best possible recovery' for the plaintiffs is exceedingly speculative, the reasonableness of the settlement can be fairly judged by looking at the nature of the settlement itself and taking into consideration the risks of litigation." *Id.*

Of the $111,035.78 in total Individual Payments, $40,221.94 is attributable to the Job Site Work Allegations, which amounts to 25% of the total overtime wages Plaintiff previously estimated the Eligible Settlement Participants stood to recover on this claim ($158,017.44), assuming a three-year lookback period extending back to March 27, 2020. Further, $68,486.02 is attributable to the Overnight Travel Allegations, which is 60% of the $113,825.42 in wages Plaintiff previously estimated was owed. Finally, the remaining $2,327.82 in Individual Payments is allocated the Overtime Rate Allegations, and constitutes a full recovery of both the actual and liquidated damages for this claim.

The Parties respectfully submit that the rate of recovery for each claim is reasonable and proportionate to each claim's level of risk to Plaintiff and the strength of the defenses thereto. Further, the $200,000.00 Total Eligible Settlement Amount represents 73% of the $273,006.77 in wages previously estimated by Plaintiff. *See Katz v. DNC Servs. Corp.*, No. 16-5800, 2024 U.S. Dist. LEXIS 20629, at *28-29 (E.D. Pa. Feb. 5, 2024) (finding final two *Girsh* factors favored approval of FLSA settlement totaling $3.5 million, where the range of recovery was $0 to $11.8 million); *Ricci v. Newrez LLC*, No. 5:22-cv-0650, 2023 U.S. Dist. LEXIS 186727, at *21-22 (E.D. Pa. Oct. 17, 2023) (finding final two *Girsh* factors favored approval of FLSA settlement totaling

$239,818, which was 84% of the $285,373 in wages estimated by plaintiff's expert).

Likewise, consideration of "the nature of the settlement itself" also supports approval, as the Proposed Settlement was reached by competent counsel with significant experience in wage-and-hour law. Plaintiff's lead counsel Nicholas Conlon is a Partner of the firm Brown, LLC (a prominent plaintiffs' litigation firm led by former FBI Legal Advisor Jason T. Brown that focuses on wage-and-hour, *qui tam*, and mass tort cases) and the Chair of the firm's Wage-and-Hour Team, and has nearly ten years of experience focused almost exclusively on representing workers in wage-and-hour cases. Conlon Decl. ¶¶ 8-10. He has been counsel of record in over forty wage-and-hour cases that have resulted in collective and/or class settlements. *Id*. ¶ 12. Counsel reached the Proposed Settlement through vigorous, arm's length negotiations, including two mediation sessions with an experienced neutral. Finally, the Individual Payments will be allocated amongst the Eligible Settlement Participants based on their *pro rata* share of total recorded hours and/or estimated miles driven travelling from the hotel or job site back home. *See Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *16-17 (finding similar considerations supportive of approval under the eighth and ninth *Girsh* factors).

In sum, the Proposed Settlement was reached through arm's length negotiations by experienced counsel, and because all of the relevant *Girsh* factors are satisfied, the Court should conclude that the Settlement is fair and reasonable.

### C. The Proposed Settlement Furthers the Purposes of the FLSA

In determining whether a settlement furthers or frustrates implementation of the FLSA in the workplace, courts consider "three interrelated FLSA objectives: (1) combatting inequalities in bargaining power between employers and employees, 2) ensuring widespread employer compliance with the FLSA, and (3) honoring the private-public character of employee rights,

whereby the public has a general interest in employee well-being and access to fair wages." *Ortiz v. Freight Rite, Inc*, No. 1:21-CV-1060, 2021 U.S. Dist. LEXIS 241748, at *10 (M.D. Pa. Dec. 17, 2021) (quotations and internal citations omitted)." "Courts assess a settlement's consonance with these objectives by considering, *inter alia*, the scope of any confidentiality provisions and the breadth of any release of claims provisions." *Id.* (citing *Haley v. Bell-Mark Techs. Corp*., No. 1:17-CV-1775, 2019 U.S. Dist. LEXIS 72365, 2019 WL 1925116, at *5 (M.D. Pa. Apr. 30, 2019) (collecting cases).

Here, the Proposed Settlement does not contain any confidentiality provision, the Eligible Settlement Participants who elect to participate in the Settlement will release Defendant from all federal and state wage-and-hour claims that were asserted in Plaintiff's Complaint, and the release applicable to Plaintiff is likewise limited to wage-and-hour claims. *See* Section 27. Accordingly, the Proposed Settlement does not frustrate the purposes of the FLSA. *See e.g. Brown*., No. 22-1097-KSM, 2023 U.S. Dist. LEXIS 49202, at *24-25 (finding settlement consistent with the FLSA's purposes because there was "no confidentiality clause" and the release only "require[d] the members of the collective to waive only their FLSA and state law wage and hour-related claims against Defendant during the class period").

### D.    The Proposed Settlement is Consistent with 29 U.S.C. § 216(b)

Because the Settlement provides for notice and potential payments to other members of the putative FLSA Collective, it potentially implicates 29 U.S.C. § 216(b), which provides that an FLSA action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" and that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." In determining "whether those who

16

purport to join the collective action are 'similarly situated,'" courts typically apply a two-step framework. *See Halle v. W. Penn Allegheny Health Sys.*, 842 F.3d 215, 224 (3d Cir. 2016).

"There is little guidance in the Third Circuit, however, on the applicability of the two-step certification process where the parties reach a settlement before the court has conditionally certified the FLSA collective.," as the Parties have here. *Brown*, No. 22-1097-KSM, 2023 U.S. Dist. LEXIS 49202, at *10 n.8 (citing *Owens v. Interstate Safety Serv. Inc*., No. 3:17-CV-0017, 2017 U.S. Dist. LEXIS 192247, 2017 WL 5593295, at *1 (M.D. Pa. Nov. 21, 2017) (approving FLSA settlement that was reached before motion for conditional certification was filed but not engaging in certification analysis)). In *Brown*, which also involved a putative collective action settlement reached before any collective had been certified, the court found "certification via a 'one-step' approval process" appropriate "in the interest of judicial economy and administrative efficiency," 2023 U.S. Dist. LEXIS 49202, at *10, and granted "final certification" based on its finding that plaintiffs would "provide sufficient notice to the putative class members of the resolution of this action, and that the putative class members are so 'similarly situated' to warrant collective relief under the FLSA." *Id*. at *14-15. Similarly, in *Kapolka*, Judge Ranjan approved a settlement that, like the one here, included notice and potential payments to putative collective members, but did not apply a two-step framework or expressly consider whether the putative collective members were similarly situated. No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359.

Here, the Parties similarly request that the Court apply a one-step approval process, and approve the Settlement as well as the proposed notice process. While the Settlement is not predicated on the Court expressly "certifying" the collective or finding that that the proposed Eligible Settlement Participants are "similarly situated," it is consistent with 29 U.S.C. § 216(b) because

each Eligible Settlement Participant will only receive a payment and release claims if he or she "gives his consent in writing to become such a party and such consent is filed…." 29 U.S.C. § 216(b); *see also* Proposed Settlement, ¶¶ 27. 35-37; *Brown*, 2023 U.S. Dist. LEXIS 49202, *11 ("'[i]]n order to be bound by a FLSA collective action settlement, potential class members must affirmatively opt in.'") (quoting *Keller v. TD Bank, N.A*., No. CIV.A. 12-5054, 2014 U.S. Dist. LEXIS 155889, 2014 WL 5591033, at *13 (E.D. Pa. Nov. 4, 2014).

To the extent the Eligible Settlement Participants must be found "similarly situated" for the Settlement to be approved, such a finding is appropriate. In determining whether employees are "similarly situated" under 29 U.S.C. § 216(b), courts typically consider various factors, such as "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief, and whether they have similar salaries and circumstances of employment." *Sawyer v. Health Care Sols. at Home, Inc*., 2019 U.S. Dist. LEXIS 61499, at *6 (E.D. Pa. Apr. 9, 2019) (quoting *Keller*, Civ. No. 12-5054, 2014 U.S. Dist. LEXIS 155889, 2014 WL 5591033, at *8).

The Parties stipulate and agree, only for purposes of the Settlement and approval thereof, that Plaintiff and the Eligible Settlement Participants are similarly situated to one another under 29 U.S.C. § 216(b) because they were all employed by Defendant as non-exempt laborers in non-supervisory roles as painters on Defendant's projects whom Defendant supervised, managed, and controlled during such projects. Further, Plaintiff and the Eligible Settlement Participants were all paid on an hourly basis for the hours reported on their daily timesheets, and have the same claims for alleged unpaid wages for work performed at job sites and time spent travelling outside of their home communities during their normal working hours between their homes and the job assignments that required overnight stays, and for Defendant's alleged failure to properly include "Supp Benefit" pay in the calculation of laborers' regular

rate of pay in Pennsylvania, and all seek identical relief, i.e. unpaid wages and liquidated damages. *See Brown*, 2023 U.S. Dist. LEXIS 49202, at *14-15 (finding similar representations sufficient to certify collective for settlement purposes).

Because the proposed Settlement does not seek to bind any persons who do not affirmatively elect to participate and the Parties are not requesting that the Court certify a class under Fed. Rule Civ. P. 23 (which Defendant would oppose on grounds including, but not limited to, lack of numerosity), the Parties respectfully submit that the approval procedures set forth in Rule 23(e) are inapplicable.

### E.    Attorneys' Fees

"'The Court must also separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined.'" *Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *17 (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 364 (S.D.N.Y. 2013)).

"Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Kraus*, 155 F. Supp. 3d at 533. In determining what constitutes a reasonable percentage fee award, a district court must consider several factors, "many of which are similar to the *Girsh* factors" discussed above. *In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). Those factors are:

1) the size of the fund created and the number of beneficiaries;

2) the presence or absence of substantial objections by members of the class to the settlement terms or the fees requested by counsel;

3) the skill and efficiency of the attorneys involved;

4) the complexity and duration of the litigation;

5) the risk of nonpayment;

6) the time devoted to the case by plaintiffs' counsel;

7) the awards in similar cases;

8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;

9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and;

10) any innovative terms of settlement.

*In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009).

These factors "need not be applied in a formulaic way" and "in certain cases, one factor may outweigh the rest." *In re AT & T Corp*., 455 F.3d at 166. Courts in this Circuit also customarily 'cross-check the percentage award" derived from these factors "against the 'lodestar' award method, which is normally employed in statutory fee-award cases." *Rouse v. Comcast Corp*., No. CIV.A. 14-1115, 2015 U.S. Dist. LEXIS 49347, 2015 WL 1725721, at *11 (E.D. Pa. Apr. 15, 2015).

### 1)  The Size of the Fund Created and Number of Beneficiaries

"Generally, the appropriate percentage awarded to class counsel decreases as the size of the fund increases." *Acevedo*, No. CV 3:13-2529, 2017 U.S. Dist. LEXIS 163870, 2017 WL 4354809, at *17; This rule of thumb is "premised on the belief that increases in recovery are usually the result of the size of the class and not a result of the efforts of counsel." *Id*., at *17. "'[F]ee awards ranging from thirty to forty-three percent have been awarded in cases with funds ranging from $400,000 to $6.5 million.'" *Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *21 (quoting *Erie Cty. Retirees Ass'n v. Cty. of Erie, Pennsylvania*, 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002)).

Here, the number of beneficiaries is small relative to other cases in which fees of one-third

of the total fund have been approved, as there are only 32 Eligible Settlement Participants. *See e.g. Wood v. Saroj & Manju Invs. Phila. LLC*, No. 19-2820-KSM, 2020 U.S. Dist. LEXIS 253960, at *32-33 (E.D. Pa. May 13, 2020) ("[W]here counsel's efforts have led to the recovery of $250,000 on behalf of a class/collective comprising 532 people, attorneys' fees of 33 percent are reasonable"). Thus supports approval of the proposed one-third fee, notwithstanding the fact that it remains to be seen how many Eligible Settlement Participants will opt in to the Proposed Settlement. *See Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *20 ("The Court cannot accurately assess the 'number of beneficiaries' here, because the parties have settled before certification of any class and have not provided the Court an estimate of the number of individuals expected to opt in to the proposed settlement. All the same, a 35% fee award is reasonable given the total size of the fund.");

       2)  <u>Skill and Efficiency of Attorneys' Involved</u>

As discussed above, Plaintiff's counsel has significant experience handling wage-and-hour collective and class actions. Conlon Decl. ¶¶ 8-12. Counsel's skill is further evident from their ability to reach the Proposed Settlement early in the litigation while still ensuring that they adequately investigated and analyzed Defendant's potential exposure and negotiated an amount sufficiently to offer fair value for each Eligible Settlement Participant's claims. Accordingly, this factor supports approval of the proposed one-third fee. *Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *23 (finding this factor satisfied because plaintiffs had "competent counsel whose considerable skill and experience likely facilitated the early and efficient settlement").

       3)  <u>Risk of Nonpayment</u>

This factor warrants approval of the proposed fee because counsel represented Plaintiff on

a contingent basis in this matter and has invested over 90 hours of billable time and $7,310.63 in costs, without any guarantee of payment of reimbursement. Conlon Decl. ¶¶ 13-17.; *Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *24 (finding this factor satisfied for the same reasons).

4) <u>Amount of Time Devoted by Plaintiffs' Counsel</u>

As set forth in Mr. Conlon's Declaration, he and his colleagues at Brown, LLC have devoted over 90 hours to this case, which equates to $37,876.00 in attorneys' fees based on the hourly rates hourly rates typically deemed reasonable in similar cases in this jurisdiction. Conlon Decl. ¶ 13. Their work has included drafting pleadings and other filings, participating in the Telephonic Initial Case Management Conference, negotiating with Defendant, analyzing Defendant's informal production of documents, preparing for and engaging in mediation, and cooperating in the preparation of the long-term settlement agreement and exhibits, as well as this Motion. *Id*. at ¶ 14; *Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *24-25 (finding fourth factor supported approval of $386,750.00 fee where "counsel and their staff have devoted about 300 hours to th[e] matter, rendering services valued at $141,870.00").

5) <u>Awards in Similar Cases</u>

The proposed fee of one third of the $200,000 Total Eligible Settlement Amount is similar awards approved in other wage-and-hour settlements providing for a similar amount of monetary relief. *See e.g. Wood*, No. 19-2820-KSM, 2020 U.S. Dist. LEXIS 253960, at *35-36 (finding this factor supported approving fees of one third of the $250,000 settlement, and observing that "courts have approved similar percentages of recovery in wage and hour cases involving common funds of much larger size" and collecting cases).

6)  <u>Value of Benefits Attributable to Class Counsel Relative to Other Groups</u>

This factor supports approval of the proposed fee because all of the benefits available to Eligible Settlement Participants under the Proposed Settlement are the result of counsel's actions to commence and prosecute this action, as the Parties are unaware of any efforts by other parties or counsel or government agencies to pursue similar claims. *See Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *26 (finding sixth factor satisfied by absence of Department of Labor investigations or other actions).

7)  <u>Percentage Fee if Subject to Private Fee Arrangement</u>

In private contingency fee cases, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *Id.*at *26 (quoting *In re Ikon Office Solutions, Inc*., 194 F.R.D. 166, 194 (E.D. Pa. 2000)). Here, the proposed fee of one third of the Total Eligible Settlement Amount is well within this range, which favors approval.

8)  <u>Any Innovative Terms of Settlement</u>

The Proposed Settlement does not include any innovative terms, which weighs in favor of approval. *Id.*at *27.

9)  <u>Results of a Lodestar Cross-Check</u>

The Third Circuit has "suggested it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 305 (3d Cir. 2005). When conducting a "lodestar" analysis, the Court first calculates a "lodestar" by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp*., 396 F.3d at 305. "Then, the Court must 'multiply the lodestar calculation to reflect the risks of nonrecovery, to reward an

extraordinary result, or to encourage counsel to undertake socially useful litigation.'" *Kapolk*a, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *27-28 (quoting *Rouse v. Comcast Corp*., No. CIV.A. 14-1115, 2015 U.S. Dist. LEXIS 49347, 2015 WL 1725721, at *14 (E.D. Pa. Apr. 15, 2015). "Finally, the result is compared to the proposed percentage fee award to confirm the reasonableness of that award," with "'[m]ultiples ranging from one to four [] frequently awarded in common fund cases when the lodestar method is applied.'" *Id*. at *28 (quoting *In re Prudential Ins. Co*., 148 F.3d at 341).

"Yet 'in determining the lodestar for cross-check purposes, the Court need not engage in a full-blown lodestar inquiry with 'mathematical precision.'" *Id.* (quoting *Rouse*, No. CIV.A. 14-1115, 2015 U.S. Dist. LEXIS 49347, 2015 WL 1725721, at *14). "Moreover, the Court 'does not have to review actual billing records' but can rel[y] on summaries submitted by the attorneys.'" *Id.* (quoting *Young v. Tri Cty. Sec. Agency, Inc*., No. CIV.A. 13-5971, 2014 U.S. Dist. LEXIS 62931, 2014 WL 1806881, at *10 (E.D. Pa. May 7, 2014)). That said, [e]ven when used as a cross-check, courts should 'explain how the application of a multiplier is justified by the facts of a particular case.'" *In re Rite Aid Corp*., 396 F.3d at 306.

"To perform the cross-check, 'district courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter.'" *Kapolk*a, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *29 (quoting *In re Rite Aid Corp*., 396 F.3d at 30).

Here, Plaintiffs' counsel's Declaration includes a lodestar calculation of $37,876.00, as follows:

|  | Hours | Rate | Total Billed |
|---|---|---|---|
| Jason T. Brown | 5.1 | $650.00 | $3,315.00 |
| Nicholas Conlon | 73.1 | $450.00 | $32,895.00 |
| Osmara Suazo | 11.9 | $140.00 | $1,666.00 |

| Total Billed | 90.1 | $420.38 (blended) | $37,876.00 |
|---|---|---|---|

Conlon Decl. ¶ 13.

Plaintiff's counsel anticipates spending an additional approximate 10 hours (equating to $2,950.00 in fees) assisting with the facilitation of the proposed notice, handling inquiries from Eligible Settlement Participants, and ensuring payments are sent out timely. *Id*. at ¶ 15.

Plaintiff respectfully submits these hourly rates are reasonable in light of each person's professional qualifications and experience, as forth in the firm resume accompanying counsel's Declaration, and are consistent with rates counsel have proposed in support of similar lodestar crosschecks that have been approved in this District. *See Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *27-31 (finding lodestar of $152,020.00 supported crosscheck); *id.* at ECF No. 52, Pages 3-4 of 4 (proposing $650 hourly rate for attorneys with 20 and 23 years of experience and $450 hour rate for attorney with nine years of experience); *Parmenter v. Romolo Chocolates, Inc.*, *et al.*, No. 1:22-cv-00233-SPB (W.D. Pa.), ECF No. 31 (granting final approval of one-third fee award in wage-and-hour collective and class action settlement, in which Brown, LLC was appointed class counsel); *id.* at ECF No. 21-2, Page 4 of 8 (seeking to justify lodestar crosscheck with same rates proposed above).

Adding counsel's $37,876.00 in past fees to its $2,950.00 in anticipated fees yields a lodestar of $40,826.00, over which the proposed $66,666.67 fee represents a 1.63 multiplier, which is well within the range for approval. *See Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359 (approving lodestar multiplier of 2.54, finding it to be "'well within the [1.0 to 4.0] range frequently awarded in common fund cases in this Circuit.'") (quoting *Rouse*, No. CIV.A. 14-1115, 2015 U.S. Dist. LEXIS 49347, 2015 WL 1725721, at *14).

Accordingly, the propose one third fee should be approved.

### F.    Costs

"[C]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014). The Proposed Settlement allocates $12,297.55 to Plaintiff's counsel for reimbursement of litigation costs incurred, including filing and serving the complaint, informational campaigns, use of LexisNexis for accessing court filings and legal research, mediation fees, and the costs and fees owed to the Administrator for assisting with the proposed notice process. Conlon Decl. ¶ 16.; *Kapolka*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *31-33 (approving $6,727.70 in reimbursement for similar costs).

### G.    Collective Representative Payment

"Service payments are a common feature of collective action settlements." *Brown*, No. 22-1097-KSM, 2023 U.S. Dist. LEXIS 49202, at *25 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011)). These payments serve "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of [the] litigation and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333 n.65 (cleaned up).

Here, the proposed $10,000 Collective Representative Payment is reasonable in relation to the time and risk Plaintiff has incurred in prosecuting this action, and by the overall fairness and reasonableness of the Proposed Settlement as set forth herein. Plaintiff's efforts in prosecuting this action have included producing large volumes of documents to counsel, which were important in counsel's evaluation and negotiation of the Proposed Settlement, participating in telephone conferences with counsel (totaling to over 7.5 hours), and participating in the mediation sessions.

Conlon Decl. ¶ 17. Accordingly, the proposed Collective Representative Payment should be approved. *See Katz v. DNC Servs. Corp.*, No. 16-5800, 2024 U.S. Dist. LEXIS 20629, at \*46-47 (E.D. Pa. Feb. 5, 2024) (approving $10,000 service payment); *Ricci*, No. 5:22-cv-0650, 2023 U.S. Dist. LEXIS 186727, at \*24-25 (same); *Copley*, No. 2:20-CV-01442-CCW, 2023 U.S. Dist. LEXIS 23452, at \*10-11 (preliminarily approving $10,000 service awards); *Robertson v. Enbridge (U.S.) Inc*., No. 2:19-cv-1080-WSS-LPL, 2021 U.S. Dist. LEXIS 258035, at \*5-6 (W.D. Pa. Dec. 17, 2021) (approving $15,000 enhancement awards).

## IV.  CONCLUSION

For the reasons set forth herein, the Proposed Settlement is a fair and reasonable resolution of a *bona fide* dispute over Defendant's liability and exposure for the claims asserted in this action. Accordingly, the Court should enter an order (1) approving the Proposed Settlement in its entirety; (2) directing the Parties to implement and complete the notice and claims process described in the Proposed Settlement; and (3) dismissing this action with prejudice.

Respectfully submitted,

Dated: April 18, 2024

By:  */s/ Nicholas Conlon*
Nicholas Conlon (admitted PHV)
Jason T. Brown (PA Bar I.D. # 79369)
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, New Jersey 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com

*Attorneys for Plaintiff*

*/s/ Marco S. Attisano*
Flannery Georgalis LLC
Marco S. Attisano (PA Bar I.D. # 316736)
707 Grant Street, Suite 2750
Pittsburgh, Pennsylvania 15219
Phone: 412-438-8209
mattisano@flannerygeorgalis.com

*/s/ David J. Kaufman*
David J. Kaufman (Ohio Bar No. 0078197)
*(admitted pro hac vice)*
Ronald M. McMcillan (Ohio Bar No. 0072437)
*(admitted pro hac vice)*
Abbey Kinson Brown (Ohio Bar No. 0092629)
*(admitted pro hac vice)*
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
Phone: 216-622-8200
dkaufman@calfee.com
rmcmillan@calfee.com
abrown@calfee.com

Attorneys for Defendant Worldwide Industries Corp.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 18, 2024, I served a true and correct copy of the foregoing document by filing it on the Court's ECF system.

By:   */s/ Nicholas Conlon*
Nicholas Conlon (admitted PHV)

28